IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Mary Frances B.,[1] <br><br> **Plaintiff,** <br><br> v. <br><br> **ANDREW M. SAUL,** <br> **COMMISSIONER OF SOCIAL** <br> **SECURITY,**[2] <br><br> **Defendant.** | Case No. 19 C 00072 <br><br> Magistrate Judge Beth W. Jantz |

## MEMORANDUM OPINION AND ORDER

Plaintiff Mary Frances B. brings this action under 42 U.S.C. § 405(g) for review of the Commissioner's decision denying her application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. The parties have consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), and filed cross-motions for summary judgment. For the reasons stated below, the case is remanded for further proceedings consistent with this Opinion.

### I. PROCEDURAL HISTORY

On January 22, 2015, Plaintiff applied for DIB, alleging that she became disabled on April 1, 2012. (R. at 62–63). Her claims were denied initially on May 18, 2015 and upon reconsideration on October 5, 2015, after which Plaintiff timely requested a hearing. (*Id.* at 69, 81, 99–100). Plaintiff, represented by counsel,

---

[1] In accordance with Internal Operating Procedure 22, the Court refers to Plaintiff only by her first name and the first initial of her last name.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), the Court substitutes Andrew Saul as the named defendant.

testified at a hearing before an Administrative Law Judge (ALJ) on May 3, 2017. (*Id.* at 30–61). The ALJ also heard testimony from Julie Bose, a vocational expert (VE). (*Id.*).

The ALJ issued a decision denying benefits on October 3, 2017. (R. at 15–24). Applying the five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff had not engaged in substantial gainful activity from her alleged onset date of April 1, 2012 through her date last insured of December 31, 2015. (*Id.* at 17). At step two, the ALJ found that Plaintiff's obesity, antiphospholipid syndrome with pulmonary embolism in 2010, neuroma of the second and third interspace of both feet; plantar fasciitis, and calcaneal spurs were severe impairments. (*Id.*). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the listings enumerated in the regulations. (*Id.* at 18–20).

The ALJ then assessed Plaintiff's Residual Functional Capacity (RFC)[3] and determined that Plaintiff has the RFC to perform medium work as defined in 20 C.F.R. §404.1567(c) except with the following limitations:

> [N]o climbing ladders, ropes, and scaffolding. She could engage in frequent, but not constant, balancing, stooping, kneeling, crouching, crawling, and climbing of ramps and stairs. The claimant could not have concentrated exposure to hazards (defined as work at heights, around sharp objects like knives, or around dangerous moving machinery like a forklift) or vibration.

---

[3] Before proceeding from step three to step four, the ALJ assesses a claimant's RFC, which is the most a claimant can do despite any limitations. *See* 20 C.F.R. § 404.1545(a)(1); SSR 96-8p, 1996 WL 374184, at *1–2 (July 2, 1996).

(R. at 20). At step four, based on Plaintiff's RFC and the VE's testimony, the ALJ determined that Plaintiff was able to perform her past relevant work as an office manager. (*Id.* at 23). Accordingly, the ALJ concluded that Plaintiff was not under a disability, as defined by the Act, from April 1, 2012, the alleged onset date, through December 31, 2015, the date last insured. (*Id.* at 24).

On November 2, 2018, the Appeals Council denied Plaintiff's request for review. (R. at 1–8). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *Villano v. Astrue*, 556 F.3d 558, 561–62 (7th Cir. 2009).

## II. DISCUSSION

The Court will uphold the ALJ's decision if it is supported by "substantial evidence"—that is, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation omitted). In reviewing the ALJ's decision, the Court may not "reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the" ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (internal quotation omitted). Although this review is deferential, it is not "a rubber-stamp" on the ALJ's decision. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). The ALJ must build "an accurate and logical bridge" between the evidence and his conclusion. *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020) (internal quotation omitted).

Plaintiff makes a number of arguments challenging the ALJ's decision. After reviewing the record and the parties' briefs, the Court is persuaded by Plaintiff's argument that the ALJ reversibly erred in assessing Plaintiff's subjective symptoms.[4]

The Court will overturn the ALJ's subjective symptom evaluation if it is "'patently wrong,' meaning it lacks explanation or support." *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017) (quoting *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014)). The ALJ must justify her assessment with "specific reasons supported by the record." *Pepper v. Colvin,* 712 F.3d 351, 367 (7th Cir. 2013). Moreover, "the ALJ must explain her [subjective symptom evaluation] in such a way that allows [the Court] to determine whether she reached her decision in a rational manner, logically based on her specific findings and the evidence in the record." *Murphy*, 759 F.3d at 816; *see* SSR 16-3p, 2017 WL 5180304, at *10 (Oct. 25, 2017) (the ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.").

Here, the ALJ found that Plaintiff's symptom allegations were "not entirely consistent with the medical evidence and other evidence in the record." (R. at 21). Specifically, the ALJ found that Plaintiff's allegations were not supported by (1) her conservative treatment; (2) her daily activities; (3) her conflicting reasons as to why

---

[4] Because the Court remands for this reason, it need not address Plaintiff's other arguments at this time.

4

she stopped working; and (4) the objective medical findings. (*Id.* at 21–23). Because these reasons are legally insufficient and not supported by substantial evidence, remand is warranted. *See Ghiselli v. Colvin*, 837 F.3d 771, 778–79 (7th Cir. 2016).

First, the ALJ improperly discounted Plaintiff's alleged limitations because of her "relatively conservative treatment." (R. at 21). An ALJ "must first explore the claimant's reasons for the lack of medical care before drawing a negative inference" by, for instance, questioning the claimant "to determine whether there are good reasons [she] does not seek medical treatment." *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) (internal quotations omitted); *see* SSR 16-3p, 2017 WL 5180304 at *9–10. ("We will not find an individual's symptoms inconsistent with the evidence in the record on [the basis of conservative treatment] without considering possible reasons he or she may not . . . seek treatment consistent with the degree of his or her complaints."). The ALJ did not do so here. Moreover, the ALJ ignored explanations provided in the record for Plaintiff's failure to pursue more aggressive treatment like surgery. For instance, Plaintiff explains in a Pain Questionnaire dated August 3, 2015 that she is not a good candidate for surgery because of her autoimmune disease and other health issues. (R. at 264–66). While the ALJ acknowledged her "antiphospholipid syndrome, an autoimmune disorder that is characterized by an increased tendency to form abnormal blood clots" as a severe impairment, (*id.* at 17, 21), she did not consider Plaintiff's explanation for not obtaining surgery due to this disorder before drawing a negative inference. This was error. *Hill v. Colvin*, 807 F.3d 862 (7th Cir. 2015) (remanding to agency where ALJ

5

"ignored explanations for the conservative treatment"); *Beardsley v. Colvin*, 758 F.3d 834, 840–41 (7th Cir. 2014) (finding error where the ALJ "made no evident attempt to determine why [plaintiff] elected not to have expensive and invasive surgery on her knee and instead opted for the injections" before drawing a negative inference.).

Second, the ALJ erred in dismissing Plaintiff's subjective symptom statements because of her ability to perform basic daily activities without explaining how these activities undermined her allegations. While an ALJ is directed to consider a claimant's daily activities when evaluating her description of symptoms, *see* SSR 16-3p, 2017 WL 5180304 at *7, the ALJ must explain why any perceived inconsistencies undercut her allegations unless the inconsistencies are so obvious that no explanation is necessary. *Cullinan*, 878 F.3d at 603 (finding error where "the ALJ did not explain why doing [ ] household chores was inconsistent with [plaintiff's] description of her pain and limited mobility" and no inconsistency was obvious). Here, the ALJ did not explain how Plaintiff's ability to "care for her personal needs, help care for a dog and bird, prepare meals, do some household chores, drive three times a week, use a computer and shop at Aldi" is inconsistent with her alleged pain and limitations. (R. at 21). Nor is any inconsistency obvious, especially given the significant difficulties Plaintiff reports in conducting these activities. (*See e.g.*, *Id.* at 45 (can only fix a salad or a sandwich and stand in kitchen for 10 minutes at a time; can only walk outside for 10 minutes at a time and needs to use benches for breaks); 48–49 (babysits her grandsons six times a year, but

6

always has her husband or son with her to help); 52–53 (needs to take frequent breaks and "pace" herself when doing limited household chores)). "An ALJ cannot disregard a claimant's limitations in performing household activities." *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009). But that is what the ALJ has done here.

The ALJ's statement that "medical records do not support an inability to be on her feet for long periods, as she has informed medical professionals that she is able to perform activities such as caring for her garden," (r. at 21), similarly fails. It is unclear how "caring for her garden," which she testifies is limited to sweeping up a little and tending to "tomatoes and peppers" in boxes that her husband built, (*id.* at 48), contradicts her statement that she cannot be on her feet for long periods. The ALJ erroneously failed to explain the perceived discrepancy between Plaintiff's daily activities and her subjective reports concerning her pain and limitations. *See Ghiselli*, 837 F.3d 778; *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011).

Third, the ALJ faults Plaintiff for providing "conflicting reasons as to why she stopped working." (R. at 23). The ALJ contrasts an April 2015 treatment note where Plaintiff informed her podiatrist that she applied for disability "because of multiple autoimmune issues" (*id.* at 23, citing 476), with a September 2015 treatment note where she told her endocrinologist that she "quit work because of her feet," (*id.* at 23, citing 534). It is unclear how these two reports amount to a material inconsistency, especially since Plaintiff also discusses in detail the pains in her feet at the April 2015 podiatrist visit, and the September 2015 treatment note accounts for her past medical history of autoimmune disease. (*Id.* at 476, 534). At the

7

hearing, when asked why she stopped working, Plaintiff stated, "it started with both feet having severe problems," (r. at 42), then later testified to the compounded difficulties of having both foot pain and blood clotting issues from her autoimmune disorder, (*id.* at 42, 51–52). The ALJ acknowledged both as severe impairments. (*Id.* at 17). The Court finds this perceived inconsistency identified by the ALJ to be "so minor as to be immaterial." *Stage v. Colvin*, 812 F.3d 1121, 1126 (7th Cir. 2016).

Other than these three unsupported grounds, the ALJ's adverse evaluation of Plaintiff's allegations relies solely on the fact that Plaintiff's subjective complaints did not align with the objective evidence. But an ALJ cannot discount Plaintiff's testimony "simply because it is not corroborated by objective medical evidence." *Hill v. Colvin*, 807 F.3d 862, 869 (7th Cir. 2015); SSR 16-3p, 2017 WL 5180304, at *5 ("[W]e will not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual."). Because all of the other reasons proffered by the ALJ "were illogical or otherwise flawed," the lack of supporting medical evidence alone cannot support the ALJ's adverse subjective symptom determination. *Thomas v. Colvin*, 745 F.3d 802, 806–07 (7th Cir. 2014). This is particularly true with allegations of pain, which are in dispute here. *See Pierce v. Colvin*, 739 F.3d 1046, 1049–50 (7th Cir. 2014) ("An ALJ may not discount a claimant's [symptom statements] just because her claims of pain are unsupported by significant physical and diagnostic examination results.").

8

Accordingly, the ALJ's evaluation of Plaintiff's subjective symptoms is not supported by substantial evidence. Because that evaluation informs the ALJ's RFC determination and her conclusion that Plaintiff can perform her past relevant work, this case must be remanded. *See Ghiselli*, 837 F.3d at 778–79.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's request to remand for additional proceedings [16] is **GRANTED**, and the Commissioner's motion for summary judgment [23] is **DENIED**. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

E N T E R:

Dated: May 19, 2020

BETH W. JANTZ
United States Magistrate Judge